## SUCCESSION OF GIROD.

Where there are different administrators of a succession, succeeding each other, each administrator will be entitled to commissions on such portions of the estate as have been administered by him.

The fact that some time after the opening of a succession, a large portion of the property included in the inventory and apparently belonging to it, was claimed by the heirs of another person, and, after a protracted litigation, adjudged to belong to them, will not deprive the executors, who had, for several years, administered the property, by providing tenants, collecting rents, paying taxes, and making the repairs necessary for its preservation, of the right to charge the usual commissions upon the property. *Per Curiam :* It would be unjust to permit the real owners of the property to enrich themselves at the expense of the executors. If this equitable view be correct, it is immaterial whether they be considered as strictly clothed with seizin of the entire estate, or not—whether the compensation be granted as commissions, *eo nomine,* in the technical sense of the Code, or as a just remuneration for services which have enured to the benefit of the parties who have recovered the property.

Decision in *Succession of Mylne,* 1 Rob. 400, as to the allowance of commissions to an executor on unproductive property of the succession, affirmed.

The reason of the rule refusing the allowance of commissions to an executor on unproductive property of the succession is, that its administration gives them little or no trouble. Thus, the mere payment of the taxes on uncultivated lands, will not authorize the allowance of a commission on their value. But there are cases in which commissions should be allowed on such property; as where a suit had been instituted to evict the executor, and he defends it successfully, thus saving its value to the succession; or where the proper public authorities require the erection of a levée to protect the uncultivated lands from inundation, which would impair their value, while that value would, on the other hand, be enhanced, in a greater ratio than the expenditure, by its construction.

Where a tract of land, fronting a bayou, opposite to a sugar plantation, has been used to supply timber and fuel for the purposes of the plantation, it cannot be regarded as waste and unproductive land, on the value of which the executors cannot charge a commission.

APPEAL from the Second District Court of New Orleans, *Canon*, J. *L. Janin*, for the opponents and appellants. *Soulé* and *Roselius*, contrâ. The judgment of the court was pronounced by

SLIDELL, J. The subject of controversy upon the present appeal is, the extent of the commissions to which the executors are entitled. There was a question raised by the appellants as to two due bills, alleged to be due by one of the executors. But this point has been abandoned since the submission of the cause.

We concur with the appellants that a deduction of $426 90 should be made, that being the amount of commissions allowed to the predecessors of the present dative executors. See the *Succession of Mylne*, 1 Rob. 400.

The principal contest is with regard to the right of the executors to charge a commission upon the entire estate inventoried, it having been adjudged, since the inventory, that five-eighths of an important portion of it really belonged to the heirs of *Claude François Girod*.

When the present succession was opened, all the property inventoried apparently belonged to it. But some time after the dative testamentary executors had entered upon the discharge of their duties, proceedings in chancery were instituted in the United States Court by *Pargoud* and others, as heirs of *Claude Girod*, who died a long while ago, for the purpose of recovering a portion of this apparent property of *Nicolas Girod's* succession, on the ground that *Nicolas* acted fraudulently in the settlement of the succession of his brother *Claude*, of which he was executor, having bought portions of the estate by persons interposed &c. After a protracted litigation, a decree was rendered in favor of the complainants, and was affirmed by the Supreme Court of the United States, declaring the ownership of a certain interest in certain property to be in the heirs of *Claude*.

But it is not disputed that, during the pendency of this litigation, as well as previously, the executors of *Nicolas Girod* had the superintendence and care of this property. They attended to its administration, provided tenants, collected the rents, paid the taxes, preserved it by necessary repairs, &c. All this enured to the benefit of all parties interested. There would be no justice in permitting the heirs of *Claude* to enrich themselves at the expense of these executors, who have rendered their services in good faith, under the command of a court of competent jurisdiction, in the administration of property apparently belonging to their testator. And if this equitable view be correct, it is quite immaterial whether they are to be considered as strictly clothed with the seizin of the entire estate or not—whether we grant them the compensation as commissions, *eo nomine*, in the technical sense of the Code, or in the nature of a just remuneration for services which have enured to the benefit of *Claude's* heirs. It is very certain that we should have found those heirs taking very different ground, if the executors, upon the institution of the chancery proceedings, had abandoned the care of the property, neglected the collection of the rents and revenues, and suffered it to fall into dilapidation. The commissions of two and a half per cent are nothing more than a fair *quantum meruit* under the evidence, even if not allowable as executor's commissions strictly speaking. If the heirs of *Claude* are controlled by this reasoning, *a fortiori*, the legatees of *Nicolas* are.

It is next said that, the commissions are not allowable upon the unproductive lands.

In the case of the *Suceession of Mylne* it was held that, the executors could not have commissions upon the value of certain lands described in the opinion of

SUCCESSION
OF
GIROD.

the court as "waste lands, not cultivated, and a part not susceptible of cultivation;" and the court there remarked : " We cannot regard that species of property as the productive property of a succession. upon which the executor is entitled to charge a commission. The best evidence that it is unproductive is that, in the hands of the present executor, it has produced nothing."

We certainly are not disposed to depart from the principles recognized in that opinion. But we think that they ought not to be taken without qualification, and extended beyond their fair and reasonable import. The reason of the rule is that, an executor should not receive a commission upon that which gives him little or no trouble to administer; and, in this sense, we do not agree with the counsel of the executors in the assertion that the mere trouble of paying taxes on property entitles an executor to his commissions upon uncultivated land. In *Mylne's* case no doubt the lands were taxed, and the executors probably had the trouble of paying the taxes.

But there may be other circumstances which would, under a reasonable interpretation of the rule, and without any conflict with the spirit and fair intendment of *Mylne's* case, entitle the executor to a commission upon uncultivated land. Suppose a suit is brought to evict the executor by an adverse claimant, and he defends the suit with success, and thus saves the estate the value of the land, this, we think, a fair ground for charging a commission, even on uncultivated land.

Again, take the case which (as asserted by counsel, and not denied by the opposite party,) occurred here with regard to a portion of the lands on the Lafourche. The proper public authority commands, or necessity requires, that a levée should be erected to protect the uncultivated lands from an inundation which would impair their value, while that value, on the other hand, would be enhanced in a greater ratio than the expenditure by the construction of a levée. This would impose trouble and responsibility upon the executor, which would justify a charge of commissions. The law on this subject should be construed with a due reference to its spirit and the intention of the law giver ; and such reasonable construction will redound to the true interests of heirs and creditors.

We may remark that some of the lands which figure in the inventory as uncultivated, may, in point of fact, not come fairly under the designation of the Code. For example, the tract fronting the bayou Lafourche, opposite a sugar plantation of the deceased, may have been used for the supply of timber and fuel for the plantation purposes ; and, if so, could not be fairly classed as waste and unproductive land.

As we have not the full means of closing the present controversy, we think the ends of justice will be promoted by remanding the cause ; and if the parties, who are no doubt fully acquainted with all the material facts, do not choose to make an amicable settlement, the views we have expressed will, at all events, facilitate the future judicial proceedings.

It is therefore decreed that, the judgment of the court below be reversed, and that this cause be remanded for further proceedings, the appellees paying the costs of the appeal.