BARNETTE, Judge.
Two appeals were taken in this succession-proceeding, one each from two separate judgments, and were consolidated in this court. The first, No. 2200 on the docket of this court, is from a judgment of May 5, 1965, maintaining and confirming a writ of sequestration issued March 26 for seizure-of the succession effects by the Sheriff and ordering them to be delivered into the possession of L. J. Scanlon, Public Administrator. Scanlon, appellee, answered this appeal seeking damages for frivolous appeal. Other provisions of that judgment need not be mentioned at this point. The second appeal, No. 2227, is from a judgment of January 6, 1966, removing the Public Administrator from the administration of the succession, appointing in his stead Emerson L. Morel, and homologating the tableau of distribution and final account filed by Scan-lon. Scanlon took no appeal, nor has he-answered the appeal by Morel except to the limited extent of praying for allowance of a cost item for printing certain briefs. Morel appeals from that judgment insofar as it approved and homologated the tableau of distribution filed by Scanlon in regard to certain items of cost and particularly the fees claimed by Scanlon as Public Administrator and his attorney.
The issues involved in the first appeal, No. 2200, are now conceded by both appellant and appellee to be moot insofar as the judgment of sequestration is concerned, since the judgment of January 6 ordered, inter alia, all the assets and effects of the succession to be turned over to appellant Morel. There is no appeal from that portion of the judgment of January 6, and it is now final.
The real issue now, as it has been throughout this bitterly contested matter, *379 is a contest between Morel, claiming a prior right to the administration by virtue of his nomination by the only legal heir of the decedent, and Scanlon, the Public Administrator of Orleans Parish,[1] who insisted to the bitter end that he had a right to its administration. The controversy stems from the prospect of collecting the administrator’s and attorney’s fees from this modest estate of $14,000. Attorneys for the rival claimants have punctuated the proceeding with numerous clashes which have made the record unnecessarily long and involved.
This is the second time this case has been before us on appeal, not to mention two applications for writs. The first appeal, Succession of Meier, 172 So.2d 714, was decided by us, March 8, 1965. We now readopt the statement of the case as set out by us in that opinion.[2]
This court held in its opinion of March 8, 1965, that the Public Administrator had been prematurely and improvidently appointed. We did not annul his appointment nor order his removal, but remanded the case for further proceedings with instructions and decreed “ * * * in the interim, the status quo of the Public Administrator’s appointment to remain in effect until the judgment on remand * * 172 So.2d at 717. At that stage of the proceeding, the evidence did not conclusively establish the heirship of decedent’s niece in France, although we were impressed with the prima facie proof submitted, an opinion which has now been entirely confirmed. Her nomination of Morel to be administrator could not be given effect until her heirship and right to nominate was conclusively established. In the meantime the succession had to be administered and the assets preserved, and our decree of March 8, 1965, sought to accomplish that purpose pending final judgment on the contest between Scanlon and Morel.
After remand Scanlon sought to obtain possession of certain effects in the hands of Morel and his attorney. Their refusal to deliver them gave rise to the writ of sequestration, later maintained by the district court’s judgment of May 5, 1965. That issue is now moot, as explained above, as well as certain exceptions and pleas in opposition to the sequestration. That judgment also properly rejected reconventional demand of Morel and Thomas Barr III, his attorney, for damages, and to that extent should be affirmed.
The public administrator’s appointment and duties of office are provided in LSA-R.S. 9:1581-9:1589. The pertinent part of section 1583 provides:
“They shall be appointed administrators of all intestate succession [sic] in their respective parishes when there is no surviving husband or wife or heir present or represented in the state.”
Two days after the death of Mrs. Meier, Morel filed a petition praying for appointment as administrator of the succession. He alleged that the only surviving legal heir was a niece in the Republic of France who had authorized him to represent her, to obtain counsel, and to open the succession. A petition for notice as provided by LSA-C.C.P. arts. 3091-3093 was not filed by Morel. Consequently, the application of the Public Administrator for appointment filed two days later was not served on Morel or his attorney, and apparently they made no timely opposition to the application of the Public Administrator. The Public Administrator, after publishing notice as required by law, was appointed without notice to Morel or his counsel on March 25, 1964.
*380 There is no doubt that the Public Administrator knew of the prior application of Morel and the allegations in his petition that the succession was not vacant, that a niece in France was claiming to be the heir of decedent, and that she had authorized Morel to represent her in this State. His petition was filed under the same docket number; his request for appointment of a particular notary public to take an inventory was declined; and that portion of his requested order which pertained to the inventory was physically stricken from the order by the judge who signed it because, no doubt, of his order two days earlier appointing Thomas Barr III, notary public, to take the inventory on petition of Morel. Unquestionably the Public Administrator had knowledge of the prior application by Morel.
Notwithstanding his knowledge of Morel’s prior petition and the allegations therein, the Public Administrator represented to the court that the succession was vacant and that there was no “heir present or represented in the state” qualified to claim or assume the administration. The allegations of Morel have since been conclusively proved, and the representations made by the Public Administrator have been shown to be entirely without foundation. The Public Administrator sought appointment fully realizing that there was a prior claim and fully aware that he might be removed before completing administration.
A vacant succession is defined by LSA-C.C. art. 1095 as follows:
“A succession is called vacant when no one claims it, or when all the heirs are unknown, or when all the known heirs to it have renounced it.”
It now becomes apparent to us, as it no doubt did to the trial judge, in view of the long belated proof of heirship, that this succession is not and was not vacant. There was at all times after the death of decedent an heir represented in this State, and the Public Administrator had no right to be appointed administrator of this succession. Be that as it may, the fact remains that he was appointed, and our decree of March 8, 1965, left his appointment in effect until judgment on remand. The judgment on remand was not rendered until January 6, 1966.[3] The court then removed the Public Administrator and appointed Morel, the original petitioner, in his stead.
The Public Administrator did in fact administer this succession from March 25, 1964, to January 6, 1966. This raises the question of his fee and the fee, if any, to be paid his attorney.
Appellant strenuously opposes the fee of $710.20 claimed by the Public Administrator (five percent of the inventory as provided by LSA-R.S. 9:1589) and the attorney’s fee of $1,420.40 (ten percent of the inventory as provided by Act 507 of 1958). These two items were included in the tableau of distribution, and were homologated by the judgment of January 6, 1966.
Appellant relies principally on the authority of Succession of Miller, 27 La.Ann. 574 (1875). In that case, within two or three days after the death of Miller, an attorney was preparing to present to the judge a petition to open the succession and to apply for administration on behalf of the widow. Knowing this, the Public Administrator went to the judge’s residence some miles from town and procured an order for administration. Thereafter a contest over the succession rights of Mrs. Miller was provoked by persons claiming to be heirs, but whose claims were rejected. Mrs. Miller opposed the appointment of the Public Administrator, but the district court appointed him to administer provisionally until the *381 issues between the rival claimants could be resolved. The Supreme Court said:
“The judgment is erroneous in allowing commissions to the public administrator, and in allowing the sum of one hundred dollars for attorney’s fees. The public administrator was wholly without right to administer the estate. He knew that the deceased had left a wife, and he was in hot haste to procure an order granting him the administration before her application for it could be presented, and which he knew was already prepared and about to be presented. His pretension that he was appointed to administer provisionally, does not help his case. The provisional appointment was improperly made. The provisional appointment of the public administrator to administer an estate, applies only to cases of contestation between third parties— not to cases where the public administrator himself is a contestant, and especially where he gets up that contestation for his own profit. If this were otherwise, the public administrator could not be prevented from clutching every succession that opens within the range of his authority. By setting up his claim to administer and invoking opposition, he would get the provisional administration and claim his commissions, and thus he might levy a kind of tribute upon every succession that opened within the limits of the parish in which he exercises his functions.
“The pertinacity with which the public administrator in this case has held possession of the succession after an order was rendered for the delivery of it to the opponent, and after she had furnished the required bond, is anything but commendable. His pretense being that he had the right to retain it until he was paid the commissions he charges, not one cent of which he was entitled to, has no force.” 27 La.Ann. at 575, 576.
While there is some similarity between the Miller case and this one, the distinguishing fact is that here the Public Administrator had only the allegations in Morel’s petition as to the existence of an heir in France which was unsupported by any evidence. It was two months before Morel produced and filed prima facie evidence of this fact. When the Public Administrator insisted upon strict proof under LSA-C.C.P. arts. 2823, 2824, twenty-two months elapsed before it was produced. In the Miller case the widow of the decedent was a local resident known to the Public Administrator, and there was no reason to believe that the succession was vacant. The difference between the cases is that bad faith on the part of the Public Administrator was obvious in the Miller case, but we cannot find bad faith here, especially since our former decree left his appointment in effect until judgment on remand, anticipating that such judgment would be rendered without undue delay.
We must conclude, therefore, that the Public Administrator and his attorney are entitled to receive fees for the services they rendered until removed from office by the judgment of January 6, 1966.
LSA-R.S. 9:1589 provides that Public Administrators shall receive as compensation a fee of five percent on all funds administered by them. Section 3 of Act 507 of 1958 fixes the compensation to be paid the attorney for the public administrator at ten percent of the inventory of the vacant succession. These statutes clearly contemplate that these services shall be rendered and the fees paid accordingly only in vacant successions and in intestate successions when there is no heir present or represented in this State. Furthermore, these statutes contemplate the payment of these fees where the vacant or intestate succession has been administered to its conclusion and the heirs have been placed in possession or the assets have been deposited in the treasury of the State. This succession has not yet been concluded. Therefore, the Public Administrator and his attorney have no basis to claim the statutory fees. Succession of Plart, 26 La.Ann. 662 (1874).
*382 They have, however, performed certain administrative services of a conservatory nature pending the appointment of Morel and are entitled to a reasonable fee proportionate to the benefits they have accorded to the succession and in proportion to the total administration. LSA-C.C.P. art. 3352. The “Comments” following this article in the Code of Civil Procedure point out that it applies both where there are co-administrators and successive administrators, citing Succession of Milne, 1 Rob. 400 (La. 1842), and Succession of Girod, 4 La.Ann. 386 (1849).
In Succession of Hart, supra, the Supreme Court said:
“ * * * that it is only in cases where a public administrator opens, fully administers and closes a succession, that he is allowed five per cent, commissions.
******
“We think the [public] administrator ■entitled only to two and a half per cent, commission on collections. He was acting in the capacity of an ordinary administrator under appointment of the court.” (Emphasis added.) 26 La.Ann. at 663.
The Hart succession, like this one, was neither vacant nor intestate without heirs present or represented in the state. That ■case differs from the present one only in that there the administration was virtually ■closed when the Public Administrator was appointed. Here the reverse is true, but the principle enunciated in the Hart case is •equally applicable here, and in this case the Public Administrator should be allowed a ■greater proportion of the commission than was allowed in the Hart case. Obviously, the same logic applies to the fee of his .-attorney.
In determining reasonable fees we must Iteep in mind that an administrator’s fee is yet to be fixed and paid to Morel, and a fee is yet to be approved for his attorney. The total fees for administration should not -exceed a reasonable charge against the estate. As stated above this proceeding with its voluminous record has been devoted almost entirely to litigation between the rival claimants to the administration, motivated by the prospect of collection of fees. It would be a gross injustice to impose upon this modest estate the burden of excessive fees merely because of the volume of litigation between the rival claimants, and thus reduce the ultimate inheritance of the niece in France to a figure far below that to which she is entitled. Neither she nor the estate has benefited from this prolonged litigation. The estate has not been enhanced by Scanlon’s administration; and the conservatory measures taken, while of some benefit, have been perfunctory and required no great administrative effort. We concur in the following statement of the Supreme Court in Succession of Hart:
“ * * * We are as incredulous as the trial judge a quo who could not believe that the legislature, in creating a public office for public purposes, intended a ‘spoliation [sic]’ of successions. * * * ” 26 Lá.Ann. at 663.
While we do not approve of the dilatory tactics employed by the attorney for Morel which caused an unreasonable delay in bringing this proceeding to a conclusion, it is a fact that the succession has benefited more from the efforts of Morel and his attorney than from Scanlon’s administration. Except for their persistent and relentless opposition to the Public Administrator, he and his attorney would have imposed a charge upon the succession of $2,-130.20 for fees, a sum all out of proportion to the normal cost of administration of an estate of this size and kind. The relative value of services to the succession of the rival administrators and their attorneys should be considered in apportioning the commissions and fees.
Ordinarily, an administrator’s fee is fixed at two and one-half percent of the amount of the inventory. It is apportioned as the court directs when there is more than one administrator. The court can increase the *383 compensation upon proper showing that the usual commission is inadequate. LSA-C.C.P. arts. 3351, 3352.
Two and one-half percent of the .inventory is $355.10, of which amount the Public Administrator, L. J. Scanlon, is entitled to no more than one-half, for the reasons stated above. We therefore fix his fee at $177.55. On the same basis of proportionate payment, we fix the fee of Philip P. Spencer, Attorney for the Public Administrator, at $355.10, and will amend the tableau of distribution accordingly.
Upon remand for further administration to a final conclusion, if the district judge should find that the remaining duties of administration are such as to justify a fee for administrator Morel, which when added to the fee allowed administrator Scanlon would exceed a total of two and one-half percent of the inventory, he may grant an increase in his discretion under LSA-C.C.P. art. 3351. The fee of the attorney for administrator Morel shall be fixed by the trial judge, in his discretion, according to law with due regard for the views we have expressed herein.
The only other item in contest is one of $78.28 to Hauser Printing Company for the cost of printing briefs for the Public Administrator in connection with the former appeal before this court. This is not a legitimate charge against the succession. Whatever benefits derived therefrom were to Scanlon in his litigation with Morel over his right to continue as administrator. The trial judge was correct in disallowing this claim against the succession.
In appeal No. 2200 there is a plea of unconstitutionality of Act 497 of 1960, amending LSA-R.S. 9:1581-9:1589, relating to the appointment of Public Administrators and fixing their terms, powers and duties. In view of the rationale of this opinion it is unnecessary that we consider this question.
In appeal No. 2200, the judgment of May 5, 1965, is affirmed.
In appeal No. 2227, the judgment of January 6, 1966, approving and homologating the Tableau of Distribution and Final Account of L. J. Scanlon, Public Administrator, is amended so as to reduce the administrator’s commission to L. J. Scanlon from $710.20 to $177.55 and to reduce the fee of Philip P. Spencer, attorney for the administrator, from $1,420 to $355.10. As thus amended and in all other respects, the judgment is affirmed. The case is remanded for further administration of the succession according to law.
Cost of appeal in No. 2200 is to be paid by appellant. Cost of appeal in No. 2227 is to be paid by appellee. All further costs of court are to be assessed according to law.
Amended and affirmed; remanded.

. The Public Administrator for Orleans Parish at the time this succession was opened was William P. Hagerty. L. J. Scanlon was appointed Public Administrator by the Governor and succeeded William P. Hagerty in that office. By order of the court, July 1, 1964, Scanlon was substituted as administrator of tbis succession.

. The date, March 21, 1964, appearing on page 715, fourth paragraph, should read March 31, 1964.

. The long delay after remand was due in part to the difficulty in getting return on the interrogatories from the heir in Prance, hut it was also largely due to the failure of counsel for Morel to have the ease set for trial under the rules of the court.